UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FRANK T. DEFRANCO,

        Plaintiff,                         **MEMORANDUM AND ORDER**
                                                          12 CV 670 (DRH) (ETB)
        -against-

AMETEK AMERON, LLC; MICHAEL
HUGHES, GENERAL MANAGER; and JULIE
DO, HUMAN RESOURCES MANAGER,

        Defendants.
----------------------------------------------------------X

**APPEARANCES:**

**LAW OFFICE OF ANDREW J. SCHATKIN**
Attorney for Plaintiff
350 Jericho Turnpike
Jericho, New York 11753

**SEYFARTH SHAW LLP**
Attorneys for Defendants
620 Eighth Avenue
New York, New York 10018
By:    Michael Marino, Esq.
         Jacob Oslick, Esq.

**HURLEY, Senior District Judge:**

       Frank T. DeFranco ("plaintiff" or "DeFranco") commenced this action against, *inter alia*, Ametek Ameron, LLC ("defendant" or "Ametek") alleging that defendant violated his rights under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, by subjecting him to a hostile work environment and discriminating against him on the basis of his marital status, sex, and familial status.[1] Presently before the Court is defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) for failure

---

[1]    Although the Plaintiff also brought an emotional distress claim against Michael Hughes, Julie Do, and Ametek, he has voluntarily withdrawn this claim. (*See* Pl.'s Opp'n at 16). Because this was the only claim asserted against Hughes and Do, they are no longer defendants to this action. With only one defendant remaining, all references to "defendants" in the parties' papers have been converted to "defendant."

to state a claim upon which relief can be granted. For the reasons set forth below, defendant's motion is GRANTED.

## BACKGROUND

The following facts are drawn from the allegations in the Complaint and are assumed to be true for purposes of this motion.

On May 15, 1998, DeFranco began working for Overland Aviation, which was a Federal Aviation Administration repair station. (Compl. ¶ 7.) Plaintiff served as a technician, repairing aircraft components. (*Id.* ¶¶ 7-8.) At some point in the year 2000, Overland Aviation became Ameron Global. (*Id.* ¶ 9.) On April 1, 2010, plaintiff was "successfully transitioned" to Ametek. (*Id.*) On May 17, 2011, plaintiff was terminated. (*Id.* ¶ 10.)

Shortly after plaintiff's first son was born on January 11, 2007, he requested, and was given permission, to switch from a 40-hour workweek to a 32-hour workweek so that he could care for his child. (*Id.* ¶ 11.) According to the employee handbook at that time, working more than 30-hours per week was considered full time. (*Id.* ¶ 12) DeFranco continued working this schedule for four years. (*Id.*) On May 16, 2011, Ametek's General Manager, Michael Hughes ("Hughes"), informed plaintiff that he would need to start working 40-hours per week, plus overtime. (*Id.* ¶ 13.) After plaintiff looked into all his childcare options, he and his wife determined that he could only work a maximum of 32-hours per week. (*Id.*) The following day, plaintiff informed Hughes that he was unable to work more than a 32-hour workweek until his older son started kindergarten. (*Id.* ¶ 15.) However, DeFranco offered to take a pay cut and surrender his health insurance benefits. (*Id.* ¶ 16.) In response, Hughes informed plaintiff that his only option was to work 40-hours per week, plus overtime. (*Id.*)

After plaintiff again told Hughes that he was unable to work a 40-hour workweek "since he had no one to take care of his young children," Hughes told plaintiff "you have to leave right now then." (*Id.* ¶ 17.) When DeFranco asked if he was being terminated, Hughes responded "yes." (*Id.*) Following plaintiff's termination, Human Resources Manager Julie Do erroneously claimed that the plaintiff had resigned (*Id.* ¶ 18.) According to the plaintiff, he was terminated because Ametek "wanted to alter his work hours, but he could not comply with their requirements in this respect due to his childcare situation." (*Id.* ¶ 10.)

### DISCUSSION

**I.    Legal Standard**

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6). First, in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be

3

>enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true.

*Id.* at 555 (internal quotation marks, citations, and alterations omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Supreme Court defined plausibility as follows:

>A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

**II.**     *Plaintiff's Title VII Claims*

Under Title VII, it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of discrimination, a plaintiff must show that: "(1) he is a member of a protected class; (2) he was qualified for the position he held; (3) he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491-92 (2d Cir. 2010); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).

Contrary to the position taken by Ametek, a plaintiff at the pleading stage is "not require[d] [ ]to plead facts sufficient to establish a prima facie disparate treatment claim." *Boykin v. KeyCorp*, 521 F.3d 202, 212 (2d Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 511-12, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)); *see also McDowell v. North Shore-Long Island Jewish Health Sys., Inc.*, 839 F. Supp. 2d 562, 566 (E.D.N.Y. 2012) (indicating that "at the pleadings stage, the Court does not apply the familiar burden shifting test as articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*"). The Second Circuit has explained that a plaintiff is not required to plead "specific facts establishing a prima facie case of discrimination" because the standard articulated in *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s 'simplified notice pleading standard' would unjustifiedly impose a heightened pleading requirement on the plaintiff." *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 508, 510, 512-13) (internal quotation marks omitted). This remains the proper pleading standard in this Circuit for

5

Title VII claims, even after the Supreme Court's decision in *Twombly* and *Iqbal*. *Id.* at 213 (noting that the Supreme Court decision in *Twombly* "affirmed the vitality of *Swierkiewicz*"); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (noting that *Iqbal* "reiterated much of the discussion in *Twombly* and rejected as insufficient a pleading that the *Iqbal* Court regarded as entirely conclusory," and "reject[ing] [the defendant's] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible"); *but see Schwab v. Small*, 435 F. App'x 37, 40 (2d Cir. 2011) (noting that "[q]uestions have been raised . . . as to *Swierkiewicz's* continued viability in light of *Twombly* and *Iqbal*," but declining to address the question because the complaint "alleges facts sufficient to state a claim of employment discrimination . . . under both the *Swierkiewicz* standard and the more demanding *McDonnell Douglas*-based approach adopted by the district court").

Although "a complaint need not establish a prima facie case of employment discrimination to survive a motion to dismiss . . . the claim must be facially plausible and must give fair notice to the defendants of the basis for the claim." *Barbosa v. Continuum Health Partners, Inc.,* 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010) (internal quotation marks and citation omitted); *accord Clarke v. Roslyn Union Free Sch. Dist.*, 2012 WL 2916759, at *6 (E.D.N.Y. July 17, 2012) ("A complaint must allege a plausible claim of discrimination and give the defendant fair notice of what the plainitff's claim is and the grounds upon which it rests.") (internal quotation marks and citations omitted). "For this conclusion to be drawn, a plaintiff must allege facts that allow the court in substance to infer elements of a *prima facie* case." *King v. U.S. Sec. Assocs., Inc.*, 2012 WL 4122025, at *5 (S.D.N.Y. Aug. 22, 2012) (collecting cases).

6

### A.     *Sex Discrimination Claim*

To the extent that the plaintiff brings a discrimination claim based solely on his gender, such a claim has not been adequately pled. While the plaintiff asserts in conclusory fashion that Ametek discriminated against him because of his gender, the Complaint does not contain a single factual contention in support of this claim. Although it is alleged that plaintiff was terminated by Ametek, the Complaint neither asserts that this termination was based on the fact that he is male nor does it plead any other gender-based information suggesting that Ametek treated him differently from comparable female employees. *See Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of complaint where plaintiff failed to "allege that she was subject to any specific gender-based adverse employment action" or "set forth any factual circumstances from which a gender-based motivation for such an action might be inferred"); *Clarke*, 2012 WL 2916759, at *6-7 (concluding that "plaintiff has failed to allege any facts which provide a basis for a plausible discrimination claim under Title VII" where plaintiff failed to allege that the actions complained of were taken on the basis of plaintiff's race, color, religion, sex, or national origin). In fact, the Complaint unequivocally states that "[t]he only reason for the plaintiff's termination was Ametek Ameron's refusal to give him an accommodation for a 32-hour week to meet his childcare situation and needs." (Compl. ¶ 18.) Because the Complaint is devoid of any factual allegations indicating that DeFranco was terminated because he was male, the plaintiff has failed to plead a plausible claim of gender-based discrimination.

### B.     *"Sex Plus" Discrimination Claims*

In addition to alleging that he was discriminated against based on his gender, DeFranco alleges that he was discriminated against based on his martial and familial status. Ametek counters that Title VII does not prohibit discrimination based on marital or familial status.

(Def.'s Mem. at 6.) While true, *see* 42 U.S.C. § 2000-e2(a)(1), "[i]t is well settled that a discrimination claim can be based on membership in a class based on gender plus another characteristic, where gender is itself a protected category under the statutory rubric." *Lax v. 29 Woodmere Blvd. Owners, Inc.*, 812 F. Supp. 2d 228, 234 (E.D.N.Y. 2011); *see also Fisher v. Vassar Coll.*, 70 F.3d 1420, 1433 (2d Cir. 1995) ("[S]ex considered in conjunction with a second characteristic–'sex plus'–can delineate a 'protected group' and can therefore serve as the basis for a Title VII suit."). "Sex plus discrimination occurs when an individual is subjected to disparate treatment based on gender 'considered in conjunction with a second characteristic.'" *Lax*, 812 F. Supp. 2d at 234 (quoting *Fisher*, 70 F.3d at 1433)). Moreover, "sex plus" discrimination claims are not limited to just women. *Id.* at 235 (collecting cases).

DeFranco alleges in his Complaint that he was discriminated against based on his "marital status, sex, and familial status." (Compl. ¶¶ 1, 23.) While a literal reading of the Complaint would support the position that DeFranco has not alleged any "sex plus" discrimination claims, even if the Court were to assume that such claims were included in the Complaint, they do not survive a Rule 12(b)(6) challenge.

        1.     *Sex Plus Martial Status*

Claims of "sex plus" discrimination based on the combination of gender and marital status is a sub-class that "has been recognized as a protected category in numerous discrimination cases." *Lax*, 812 F. Supp. 2d at 235 (collecting cases). The Complaint, however, does not "allege a plausible claim of discrimination and give the defendant[s] fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Clarke*, 2012 WL 2916759, at *6 (internal quotation marks and citations omitted).

As an initial matter, Ametek (and the Court) are left assuming that the protected sub-class being asserted here is "married men." Turning now to the Complaint, there are no allegations that DeFranco's termination was based on the fact that he was a married man. To the contrary, DeFranco states that the reason he was fired was because he could not comply with Ametek's hour requirements due to his "childcare situation." (Compl. ¶¶ 10, 18.) Even assuming that this proffered reason allowed for an action under Title VII, it certainly does not put Ametek on notice of a gender plus marital status claim since children are not exclusive to just married men. With no other allegations going to plaintiff's purported gender plus marital status claim, DeFranco has insufficiently asserted the grounds upon which this claim rests. Accordingly, plaintiff's gender plus marital status claim is dismissed.

    2.    *Sex Plus Familial Status*

Gender plus familial status can also support a "sex plus" claim under Title VII. *See, e.g.*, *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 113 (2d Cir. 2004) (explaining that adverse employment decisions based upon the gender-based stereotype about mothers is unlawful "gender-plus" discrimination); *Towers v. State Univ. of N.Y.*, 2007 WL 1470152, at *1 (E.D.N.Y. 2007) (discrimination claim premised on being a mother "state[s] a claim for discrimination under Title VII"); *Trezza v. Hartford, Inc.*, 1998 WL 912101, at *7 (S.D.N.Y. Dec. 30, 1998) (denying motion to dismiss discrimination claim premised on being a woman and a parent). However, the allegation that plaintiff was terminated because Ametek "wanted to alter his work hours, but he could not comply with their requirements in this respect due to his childcare situation" (Compl. ¶ 10), does not adequately plead a gender plus familial status claim.

Absent from the Complaint is any allegation that he was terminated because he was a father. As pled, plaintiff's factual assertions offer more support for the position that he was terminated because he could not work 40-hours a week, not because he was a father. Merely alleging the reason why DeFranco could not work the necessary hours and the fact that DeFranco explained the reasoning to Ametek, does not "nudge[] [plaintiff's] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The Complaint is also devoid of facts alleging that Ametek treated the sub-class of fathers different than mothers by, for example, letting mothers work 32-hour workweeks. *Cf. Trezza*, 1998 WL 912101, at *7 ("[I]t is important to note that plaintiff does in fact allege that defendants treated men with children and women with children differently."); *Swierkiewicz,* 534 U.S. at 514 (finding that the discrimination complaint "easily satisfie[d] the requirements of Rule 8(a) because it [gave] respondent fair notice of the basis for petitioner's claims" by "alleg[ing] that he had been terminated on account of his national origin[,] . . . detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the ages and nationalities of at least some of the relevant persons involved with his termination"). Without any factual allegations stating that Ametek treated fathers and mothers differently, the Court is not in a position to infer that DeFranco's termination was on account of him being a father. Thus, plaintiff's gender plus familial status claim also fails.

  C. *Hostile Work Environment*

Finally, the Complaint makes passing references to a hostile work environment. (*See* Compl. ¶¶ 1, 23.) Under Title VII, a plaintiff establishes a hostile work environment by showing that the workplace was "permeated with 'discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Howley v. Town of Stratford*, 217 F.3d 141, 153 (2d Cir.

2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)). The conduct at issue must be "severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (internal quotations marks and citation omitted). "Isolated incidents typically do not rise to the level of a hostile work environment unless they are 'of sufficient severity' to 'alter the terms and conditions of employment as to create such an environment.'" *Dermoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006) (quoting *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 227 (2d Cir. 2004).

  Notwithstanding the conclusory allegation that DeFranco faced a hostile work environment, DeFranco alleges, at most, a single unpleasant incident in support of this claim. The Complaint states that on May 17, 2011, after plaintiff told Ametek General Manager Hughes that he could not work a 40-hour workweek because of children, Hughes told the plaintiff that he was to immediately leave the workplace. (Compl. ¶¶ 15-17.) This conversation hardly alleges conduct that could be considered severe or pervasive enough to alter the conditions of the plaintiff's employment and create an abusive working environment. While plaintiff argues that "[i]n the present economy, to lose employment is traumatic" (Pl.'s Opp'n at 14), a hostile work environment claim must satisfy both subjective and objective elements. Even if plaintiff subjectively believed that the events preceding this conversation as well as the conversation per se created a hostile work environment, the pleading, as presently framed, fails to satisfy the plausibility standard enunciated in *Twombly* as to the objective element of the cause of action. Without any other alleged conduct, plaintiff's Complaint fails to state a plausible hostile work environment claim under Title VII.

## *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss is GRANTED. While the Court has some doubts whether DeFranco can replead valid Title VII claims regarding most of the discrimination theories dismissed above, the Court is not in a position to find that repleading would altogether be futile. Therefore, the Court declines to dismiss the Complaint with prejudice.

Although the plaintiff has not specifically requested leave to amend the Complaint, he will be given one limited opportunity to do so. To the extent that DeFranco has a good faith basis to plead additional facts that would cure the deficiencies noted above, he shall file a pre-motion conference letter requesting leave to move to amend the Complaint. Such a pre-motion conference letter shall specify the additional facts that would be pled and shall be filed within thirty (30) days of the date of this Order. If the plaintiff does not file such a letter within that time frame, his opportunity to request leave to move to amend shall be deemed waived and the case will be marked closed.

**SO ORDERED.**

Dated: Central Islip, New York
March 13, 2013

/s/
Denis R. Hurley
Unites States District Judge